IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


JONI E. ERNST                        )          CASE NO. 4: 14-CV-00331-SMR-TJS
                                     )
        PLAINTIFF,                   )
                                     )          REPORT AND RECOMMENDATION
             VS.                     )
                                     )
CAROLYN COLVIN,                      )
ACTING COMMISSIONER                  )
OF SOCIAL SECURITY,                  )
                                     )
        DEFENDANT.                   )
_____

        This case has been referred to the undersigned U.S. Magistrate Judge, Recall

Status, for purposes of Report and Recommendation pursuant to 28 U.S.C. 636(a)(1) on

Plaintiff Joni E. Ernst's Complaint (Clerk's No. 1), seeking reversal of the Commissioner's

decision denying her application for Supplemental Security Benefits under Title XVI of the

Social Security Act, 42 U.S.C. 1381, et seq.

        This Court's review of the Commissioner's final decision, including this

Report and Recommendation, is done pursuant to 42. U.S.C. 405(g), 1383(c)(3).

# I. PROCEDURAL AND FACTUAL BACKGROUND

Ernst protectively filed an application for disability and disability insurance on May 23, 2011, alleging that she became disabled on June 24, 2010. That claim was initially denied on July 29, 2011, and was again denied upon reconsideration on October 20, 2011. On October 24, 2011, Ernst filed a written request for hearing on her claims pursuant to 20 CFR 404.929 *et seq.* That request was granted. Administrative Law Judge (ALJ) Jo Ann L. Draper conducted a hearing on January 24, 2013. Ernst appeared with her lawyer Michelle Hunter. At that hearing Ernst testified on her own behalf, as did the impartial vocational expert (VE) Carma A. Mitchell.

On March 1, 2013, ALJ Draper denied Ernst's application for disability insurance benefits, finding she was not disabled. Thereafter, she asked the Appeals Council to review the denial of her claim. The Appeals Council denied her request for review on July 7, 2014. Ernst filed her complaint in this Court on August 22, 2014, pursuant to 42 U.S.C. 405(g) and 1383(c)(3).

Ernst was born on July 24, 1959; she was 52 years old on the date of the alleged onset of disability, and was defined at that time as closely approaching advanced age.

## II. FINDINGS OF THE COMMISSIONER

In the decision filed March 1, 2013, the ALJ found, *inter alia:*

1. Ernst met the insured status requirements of the Social Security Act through June 30, 2016.

2. Ernst had not engaged in substantial gainful activitiy since June 24, 2010, the date her alleged onset of disabilities. 20 CFR 404 1571 et seq. However, the ALJ found that Ernst had worked after the alleged onset date. She had indicated in a Work Activity Report that she worked four to six hours one night a week at an auction firm as a clerk/cashier in both 2010 and 2011.

Ernst described her job as clerk/cashier, and that while she continued to work in that position, she had ceased doing any cooking on the job. She earned $50 per week, and had worked the night before the hearing. The ALJ found that Ernst's work at the auction house was not substantial gainful activity, which was so considered at Step One of the sequential evaluation. Regardless of that determination, the ALJ did find that work activity was an indication of involvement in a range of daily activity not consistent with disability from all work.

The ALJ, relying on Naber v. Shalala, 22 F3d 186, 188 (8th Cir. 1994), that work activity performed during any period in which an individual alleges that she was under

a disability may demonstrate an ability to engage in substantial gainful activity.

3. Ernst had severe combinations of impairments, including degenerative disc disease of the spine; degenerative joint disease of the left hip; right knee degenerative joint disease; non severe glaucoma with 20/20 vision in both eyes with lens implants; non severe obesity with a BMI of 36; non severe migraine headaches and left wrist impairment. 20 CFR 404.1520(c).

4. Ernst did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525 and 404.1526.

5. The ALJ determined that Ernst had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and that she could lift and carry 10 pounds occasionally and 5 pounds frequently; she could stand and walk 2 hours out of an 8-hour work day; she could sit 6 to 8 hours during an 8-hour work day; she should be able to change postural positions every 30 minutes; she could occasionally climb, balance, stoop, kneel, crouch and crawl; she required a cane as an assistive device to walk; and she should never climb ropes, ladders or scaffolds.

In reaching the above determinations, the ALJ noted that she considered all of Ernst's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.

In addition, the ALJ followed a two-step process which required that she first determine whether there was an underlying medically determinable physical or mental impairment which was established by medically acceptable clinical and laboratory diagnostic techniques which could reasonably be expected to produce Ernst's pain and other symptoms. In the second step taken, after underlying physical or mental impairments that could produce Ernst's pain or other symptoms had been shown, the ALJ evaluated the intensity, persistence and limiting effects of those symptoms to determine the extent to which they limited Ernst's functioning.

The ALJ noted that Ernst claimed her disability was due to lower back and hip pain which affected walking, and for which she utilized a cane; back and hip injury; and glaucoma. Utilizing case law and Social Security Administration Regulation, 20 CFR 404.1529, the ALJ found that while Ernst's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning intensity, persistence and limiting effects of those symptoms were not "entirely credible".

The ALJ also rejected the opinions, relied upon by Ernst in support of her claim, rendered by Dr. Thomas Ross, an osteopathic physician and which were contained in Exhibit 9F, and the opinions of Dr. Todd Meyer, a chiropractor, which were included in Exhibits 3F, 6F and 8F.

With respect to Dr. Ross, the ALJ noted that he made a decision that Ernst was disabled, but had only one examination of Ernst when he rendered that opinion. In addition she noted that

determination as to disability was reserved to the Commissioner of Social Security, and that

Dr. Ross' opinions not only relied upon Ernst's allegations regarding the existence, persistence

and intensity of her symptoms and functional limitations, but were also inconsistent with other

evidence and "inconsistencies" which Dr. Ross did not have available to review. Added to that

finding was the fact that on a second visit with Dr. Ross, approximately one month later, Ernst

reported that her condition had improved with the help of medications, heat and stretching.

See generally, Exhibit 9F.

With respect to the opinions generated by Dr. Meyer, who "treated" Ernst for a some-

what lengthy period of time, the ALJ noted that he also gave opinions regarding Ernst's

functional abilities, to which the ALJ was "unable to attribute much weight" because she found

that his opinions were not supported by signs and findings consistent with the degree of limit-

ation noted. In that regard the ALJ added that Dr. Meyers' opinions relied on "complete accept-

ance of the claimant's allegations concerning the existence, persistence and intensity of

symptoms and functional limitations which the record as a whole and inconsistencies establish

are not entitled to full credibility and are an under representation (sic) of function". She noted

additionally that his opinions were inconsistent with other evidence and inconsistencies in the

record "as a whole which the treating chiropractor does not appear to have been made aware of".

6.

In contrast, the ALJ noted that the evidence was reviewed by a "state agency medical consultant doctor" who was of the opinion that Ernst "should be capable of a light exertional lifting capability with the ability to stand/walk 2 hours in an 8 hour day", among other findings. That medical opinion, the ALJ pointed out, was confirmed by a second consultant medical doctor. See, generally Exhibits 2A and 4A. Notwithstanding the fact that neither of the state agency medical consultant doctors were treating or examining physicians, she found that they were familiar with the Social Security Administration requirements regarding the disability programs. Additionally, the ALJ found that the two state agency doctors' opinions were well supported and consistent with the evidence in the record as a whole. Further she noted that those medical opinions "support the ultimate finding that the claimant has not been disabled".

Additionally, the ALJ pointed out, after again noting that Ernst's allegations were "not supported by persuasive medical evidence or opinion and also noting nothing in her records indicated a limitation on sitting, but "most of her limitations have existed since 1993, and she has worked successfully at substantial gainful activity levels since then despite her alleged problems".

The ALJ set forth a number of significant facts, most of which were taken from Ernst's testimony, which she felt supported her finding that Ernst was not disabled, including the following: she "takes care of" her 84-year-old father; she uses the computer, watches

television; does light cleaning; prepares meals for herself and her father; cooks and bakes doing most of it sitting at a table; does cleaning with breaks; shopped for food once a week using a motorized cart; reads, scraps books; does some photography; took her father to appointments; works for an auction firm once a week; goes out to restaurants once a week; admitted she could lift less than 15 pounds; could sit for longer periods but maintained she would be stiff when she got up.

Based on those considerations the ALJ found that Ernst's "range of daily activities are not consistent with disability from all work but are consistent with the sedentary functional capacity" which she has established for Ernst.

Additionally the ALJ stated while Ernst testified she had used a cane since 2001, neither the examining doctor nor the state agency doctors found the use of cane necessary by Ernst. And, notwithstanding those findings, even when the ALJ asked the VE to consider the use of a cane in her opinions regarding Ernst, the VE was not of the opinion that such use would pre-clude Ernst from performing past relevant work.

Considering claims of migraine headaches, the ALJ noted that Ernst reported not having "many" migraines recently, and she had not sought out treatment for that problem "recently"; and likewise had not sought treatments for wrist problems and was not wearing a wrist brace during the hearing. The ALJ found that migraine headaches and wrist problems were "non-severe and do not have more than a minimal effect on functioning".

Noting that both medications, when used appropriately, and chiropractic treatments had been effective in reducing or controlling symptoms that Ernst claimed made her too disabled to work, the ALJ added that there were "no side effects of medications credibly established which have lasted for a 12- month continuous period despite attempts at adjustment or substitution , and which further reduce the functional capacity assigned..."

Consequently, the ALJ did not give full weight or credibility to Ernst's allegations concerning the existence, persistence and intensity of her symptoms, limiting them as set forth in the residual functional capacity she assigned to Ernst.

Significantly, the ALJ, in summarizing her opinions on these issues, stated:

> In conclusion the record considered as a whole supports some limitations in the claimant's ability to perform work-related activities. However, those limitations are adequately accommodated by the residual functional capacity (RFC) outlined above, which is consistent with objective medical findings and opinion evidence of record, as well as the documented activities. The record does not support greater limitations.

6. The ALJ found that Ernst was capable of performing relevant work as a document preparer as she performed it and as generally performed in the national economy, and a microfilm processor as she performed it. She found also that the work did not require the performance of work-related activities precluded by Ernst's residual functional capacity in accordance with 20 CFR 404.1565.

In arriving at these conclusions, the ALJ relied on the VE's evaluation of Ernst, and which were reflected in Exhibit 14E, summarizing Ernst's past relevant work, as well as indicating the job title, Dictionary of Occupational Titles (DOT) numbers and other relevant information such as occupational significant characteristics, strength demands of the job as generally performed in the national economy, and as performed by Ernst, the skill level and acquired skills. In response to a hypothetical question, utilizing the foregoing information, the VE was of the opinion that the hypothetical person could perform the job of document preparer as she performed it and as generally performed in the national economy, and a microfilm processor as she performed it.

Accepting all the evidence cited, and the answers to the hypothetical questions provided by the VE, the ALJ found that Ernst had been capable of returning to and performing her past relevant work as a document preparer as she performed it and as it was generally performed in the national economy, and as a microfilm processor as she performed it.

The ALJ found that Ernst had failed to in her burden of showing her inability to engage in past relevant work. As a result the ALJ found that Ernst could not be found disabled under Title II of the Social Security Act.

7.Ernst had not been under a disability, as defined in the Social Security Act, 20 CFR 404.1520(f), from June 24, 2010, through the date of the ALJ's decision, March 1, 2013.

### III. STANDARD OF REVIEW

A district court "will affirm the ALJ's findings if supported by substantial evidence on the record as a whole". Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009)). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" Renstrom v. Astrue, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009)). A court must look at "evidence that supports and detracts from the ALJ's decision," but '"[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" Cuthrell v. Astrue, 702 F.3d 1114, 1116 (8th Cir. 2013) (quoting Perkins, 648 F.3d at 897). "Even if substantial evidence supports a contrary outcome, [a court] may not reverse so long as the Commissioner's decision is also supported by substantial evidence." Randolph v. Barnhart, 386 F.3d 835, 839 (8th Cir. 2004) (citing Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004)).

> A court will not disturb denial of benefits as long as the ALJ's decision falls within the available zone of choices. An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [it] been the initial finder of fact.

Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quoting Bradley v. Astrue, 528 F. 3d 1113, 1115 (8th. Cir. 2008)).

The Eighth Circuit Court of Appeals has filed recent decisions, which in part have bearing on the issues present in this case.

In <u>Blackburn v. Colvin,</u> 761F.3d 853, 858, the Court stated, *inter alia, that*

" Substantial evidence is less than a preponderance of the evidence, <u>Teague v.Astrue,</u> 638 F.3d 611, 614 (8th Cir. 2011), but is "such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion," <u>Davis v. Apfel,</u> 239 F.3d 962, 966 (8th Cir. 2001). We may not reverse merely because we would have decided differently, or because substantial evidence supports a contrary out-come.<u>Id.</u>

A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. <u>Whitman v.Colvin,</u> WL 3896131, quoting <u>Goff v. Barnhart,</u> 421 F.3d 785, 790 (8th Cir. 2005). In considering how muchweight to give a treating physician's opinion, an ALJ must also consider the length of thetreatment relationship and the frequency of examinations. <u>Casey v.Astrue,</u> 503 F.3d 687, 692(8th Cir. 2007).

The Court will defer to the ALJ's credibility findings, if they are supported by adequate reasons and substantial evidence. <u>Turpin v. Colvin,</u> 750 F.3d 989, 993(8th Cir. 2014)**.**

## IV. DISCUSSION

There  is no evidence in this case, from witnesses testimony, job documents, or any other source, that Ernst's employer, Principal Financial Group, has determined that Ernst cannot perform the tasks required by her former position. There is no evidence that she was terminated from her position because of her inability to perform job requirements; and the record is absolutely devoid of any evidence that Principal has been unwilling to maintain her employment, even with accommodations.

In this context, a reading of Exhibit 5E, tr. 214-215, is not at all helpful. The document was written on November 24, 2008. Since Ernst continued working beyond that date before making her claim for disability, the question arises as to what if any changes were made to that Job Description between the date it was written and Ernst's last day of employment.

Further, the hand written comments on that exhibit, and presumably authored by Ernst, are self serving at best, and do little to help the Court determine the exact nature of Ernst's claimed disability.

Added to this is the fact, documented by Ernst's testimony as well as Exhibit 6E, which is a Social Security Administration form, Work Activity Report (Self-Employed Person), completed by Ernst, and mailed to the SSA on May 31, 2011, that notwithstanding her claims of disability, she has and continues to work as a cashier, part time, at auction houses.

In that exhibit, Ernst stated that she would work "4-6 hours one night a week" and that she would sit "the whole time". No where in that report does she indicate that she must stand periodically, or change her position. She does not state in that report, that other than being unable to perform clerking duties unless she could sit the entire night and not follow the auctioneer around the site, that she needed accommodations of any type to work in the auction houses.

The Court also notes that Ernst was given a job accommodation by Principal, Exhibit 16E, on in February, 200l, and which remained in effect through and beyond the date of that exhibit, September 23, 2008. Principal set job limits for Ernst, including, but not limited to, "not lifting 'heavy batches' (per your report that would be anything 20 pounds or greater) from the bottom shelf of a 7-high shelving unit". That communication to Ernst also required her to update Principal on her medical condition from her medical provider "to determine if we have an obligation to provide you with any additional job accommodation(s)".

Nothing in this record establishes that Ernst, in accordance with the directions from Principal, ever provided her employer with any updates that indicated that she needed additional job accommodations of any type, or that she was physically unable to perform any of her job requirements.

It appears to the Court that Ernst relies most heavily on the osteopathic opinions of Dr. Thomas Ross, who she scheduled appointments with to determine her physical condition and ability to work. The Court has read carefully the two office notes from Dr. Ross comprising his examinations of Ernst and his opinions. They are at best inconclusive, and at worst, somewhat contradictory.

Her first visit with Dr. Ross was on November 28, 2011. At that time she presented to him complaints of back pain originating in 1993 as a result of a motor vehicle accident. She advised Dr. Ross at that time that her back pain was worsening; it occurred persistently; was located in her upper back, middle back, lower back and tail bone to neck; with pain radiating to both the left and right thighs, which she described "as an ache, deep, dull, sharp, stabbing and mm (sic) spasms". Ernst also stated that her symptoms were aggravated by ascending stairs, bending, changing positions, descending stairs, flexion, pushing, rolling over in bed, sitting, standing, twisting and walking. She noted also that she was "trying to get disability and would like a Dr that is a DO to establish care".

Dr. Ross performed a physical examination at that time, and noted that Ernst had pain in both her left and right SI joints; limitations in her left and right flexion, rotation, extension, but also found that her bilateral extremity strength was normal, and her lower extremity neurovascular was normal, as was her Dorsalis pedis pulses. No swelling was noted. Neurological examination showed intact memory and no sensory loss.

Dr. Ross, after noting Ernst should continue with her chiropractic care, and that he needed to obtain medical records from Dr. Elliott, stated, " She is most likely permanently disabled should continue to pursue disability status." However, at no time in his written findings did  Dr. Ross state that Ernst was in fact disabled based upon a reasonable degree of medical or osteopathic certainty.

On December 30, 2011, Ernst again saw Dr. Ross. It appears that this was her second and last visit with him. At that time Dr. Ross noted that the "problem was stable". He found that it occurred persistently, located in the upper, middle and lower back; had radiated to the hips; with Ernst describing the pain as an ache; deep, discomforting and dull.

Dr. Ross also noted that Ernst's symptoms were aggravated by ascending stairs, bending, changing positions, daily activities, descending stairs, extension, flexion, lifting, pushing and sitting. Ernst was able to relieve these symptoms by heat, pain medications and stretching. No where in this second office visit report does Dr. Ross give an opinion that Ernst was, or is, in fact disabled.

The office notes from Dr. Ross also suggest very strongly that Ernst's visits with him were not for treatment, but mainly to have a physician available who would support her app-licaton for disability.

Ernst has been treated by a chiropractor, Dr. Todd A. Meyer, for an number of months, apparently receiving chiropractic adjustments approximately every three weeks. Exhibits 3F-8F, tr. 273-308. Her condition, according to Dr. Meyer's reports, seems to have stabilized over the period of time that he has been treating her.

According to the apparent last treatment by Dr. Meyer, December 17, 2012, Exhibit 8F, tr. 290, Ernst, at that time, was "doing slightly better since her last office visit". He noted also at that time that Ernst stated she had a "slight decrease in her lower back and hip pain, although she cannot get around much without her cane." It was also noted in the records that diversified adjustments were performed over all restricted vertebral segments and "all segments moved well".

In a July 27, 2011, letter to the State of Iowa Disability Determination Bureau, Exhibit 3F, tr. 273, Dr. Meyer reported that following her 1993 motor vehicle accident, Ernst had both osteopathic and chiropractic manipulative therapy to manage her symptoms, and that in 2001, she reported her lower back and hip condition worsened.

In that same letter, which was written almost 18 months before his last apparent treatment of Ernst, Dr. Meyer was of the opinion that she had a maximum lifting and carrying limitation of ten pounds, at a frequency of three times an hour; her standing and sitting was limited to no more than thirty consecutive minutes at a time; maximum walking was not to exceed more than

50 yards at a time; and climbing, kneeling and crawling should be avoided at all times. He also stated that the treatment schedule she was on had "been effective in managing her existing symptoms, and managing the occasional acute exacerbations that she has had". He also noted that she could not walk far without the use of her cane.

This magistrate judge could not find any opinion from Dr. Meyer that Ernst was disabled; or that she was not able to work.

In contrast to the evaluations, and opinions, of both Dr. Ross and Dr. Meyer, the Court notes the report from Dr. Majed Barazanji, a medical doctor, who evaluated Ernst and provided a Comprehensive Examination Report Disability Determination on June 30, 2011. Exhibit 2F, tr. 269-272.

In that report it was noted that Ernst visited Dr. Barazanji for the purpose of disability determination and complete physical exam. Specifically it was noted that Ernst was complaining of low back pain and bilateral knee pain as well as hip pain, all of which symptoms, according to Dr. Barazanji, began approximately three years prior to his examination.

Regarding Ernst's complaints of low back pain, the doctor noted that she stated pain was constant, both sharp and dull ache in nature, and that the pain intensified when she stood, lifted, walked or was bending. She also complained that the pain radiated to both hip areas as well as to her right leg, but that she denied any numbness or tingling.

Dr. Barazanji also reported that Ernst had been complaining of bilateral knee pain for the previous three years, but that she denied any trauma or injury caused that pain, which was worse in her right knee, and that the pain was constant with both a sharp and dull ache in nature. She reported that walking, squatting and going up and down stairs made the pain worse, and that at times her right knee "locks up".

The physical exam performed upon Ernst by Dr. Barazanji indicated to him that she "appears healthy, in no acute distress". He found she had normal judgment and insight.

The orthopedic exam he performed revealed tenderness in both knee joints upon palpation, with "no obvious swelling or effusion or deformity of these joints". He found that palpation of her lumbar spine showed tenderness. Included in his orthopedic examination, were range of motion determinations. In that regard there was normal range of motion in her shoulders, elbows, wrists, ankles and cervical spine. In her knees, flexion-extension was bilaterally decreased at 60 degrees. Decreased flexion, extension, abduction, adduction, internal rotation and external rotation were all found in her hip. Ernst's lumbar spine showed decreased flexion, extension and lateral flexion. Her straight leg raising test was bilaterally positive at 40 degrees. And it was also noted that her hands could be fully extended; a fist could be made and the fingers be opposed; both handgrips were normal "scoring at five". No sensory loss was found on either right or left

sides; and no muscle weakness was detected, although her "gait was dependent on a cane".

Dr. Barazanji also took x-rays of Ernst's lumbosacral spine as well as her right knee.

Based on his examination, tests and x-rays, his assessment of Ernst's physical condition was: low back pain with hypertrophic intervertebral osteoarthritis with considerable narrowing of the disc spaces especially at L3/L4 and L5/S1; bilateral knee pain with degenerative osteo-arthritis; bilateral hip pain with degenerative osteoarthritis; and glaucoma.

In his opinion, Ernst would have problems with stooping, climbing, kneeling and crawling; but he did not find any limitations for her in handling objects, seeing, hearing, speaking and traveling. Dr. Barazanji was of the opinion that Ernst would not have problems with work environments, including dust, fumes, temperature or hazards. He was also of the opinion that she could tolerate standing for 15 minutes; she could move about or walk for a distance of less than one block; no limitation on the amount of time she could sit; and she could lift 15 pounds.

Notably Dr. Barazanji did not find that Ernst was totally disabled. He did not opine that she could not work, especially within the limitations and findings that he included in his evaluation and which have been set forth within this report and recommendation.

The record in this case fully supports the decision of the ALJ in this case that the claimant, Joni Elizebeth Ernst has not been under a disability defined in the Social Security Act (20 CFR 416.920(g)). The denial of the claimant's application for supplemental security income filed on May 23, 2011, and her Title II application for a period of disability and

and disability insurance benefits also filed May 23, 2011, were appropriate pursuant to Section 1614(a)(3)(A) of the Social Security Act.

## V. CONCLUSION

The undersigned Magistrate Judge is of the opinion, after reviewing the record in this case, the Decision by Administrative Law Judge Jo Ann L. Draper, and the submissions by the parties that the ALJ did in fact properly and appropriately undertake the five-step sequential evaluation process in arriving at her decision. For the reasons stated, and the standard of review the Court must employ, this Magistrate Judge finds that substantial evidence supports the ALJ's conclusion that Joni Elizebeth Ernst is not disabled within the meaning of the Act. Accordingly this Magistrate Judge recommends that the Court affirm the Decision of the Administrative Law Judge and against the Plaintiff.

The parties shall have 30 days from the filing of this Report and Recommendation in which to file any and all objections, motions or other pleadings directed to this Report and Recommendation in accordance and compliance with the requirements of 28USC 636(a)(1), and the Local Rules of this Court.

**It is so ordered.**

Dated this 10th day of September, 2015

_____
THOMAS J. SHIELDS
RECALLED UNITED STATES MAGISTRATE JUDGE